STATE OF NORTH CAROLINA v. ROBERT LEE HICKMAN

No. 743SC613

(Filed 20 November 1974)

1. Criminal Law § 113— statement of State's evidence

In a prosecution for breaking and entering a drug store and larceny of property therefrom, the evidence supported the trial court's summary of portions of the State's evidence relating to how defendant broke into the drug store and what he stole.

2. Criminal Law § 99— statement by court — no expression of opinion

In a prosecution for breaking and entering and larceny, the trial court did not express an opinion on the evidence when, during cross-examination of the store manager, the court stated, "Let him finish. Tell him how you can identify those Timex watches." and when the court thereafter stated, "What he wants to know is how you could look at those watches and tell them from any other Timex watches."

3. Criminal Law § 99— court's statement to counsel — no expression of opinion

The trial court did not express an opinion when defense counsel began a question with "It is possible, is it not" and the court stated, "Let's not get into possibilities."

4. Larceny § 8— instructions — omission of "without owner's consent"

Trial court's definition of larceny as "the taking and stealing and carrying away the personal property of another with intent on the part of the taker to convert it to his own use and permanently deprive the owner of its use" was proper without the element "without the owner's consent," since the court put the question of the owner's lack of consent to the jury by the use of the word "stealing."

APPEAL by defendant from *Fountain, Judge,* 30 January 1973 Session of CARTERET County Superior Court. Heard in the Court of Appeals 12 November 1974.

The defendant was charged in a two-count bill of indictment with (1) breaking and entering a building with the intent to commit a felony, to wit, larceny; and (2) felonious larceny, after breaking and entering, of eight Timex watches, one Kodak camera and thirty-five ($35.00) dollars. The defendant pleaded not guilty.

At trial, the State offered the testimony of the manager of Eckerd's Drug Store where the offenses occurred. He testified that entry into the building was accomplished by prying open a skylight on the roof. A Morehead City police officer testified that he answered a call from the police station to in-

State v. Hickman

vestigate the silent alarm signal from the Eckerd's Drug Store. He checked the front and back doors and windows and found them to be locked. Near the back door, the officer saw the defendant standing approximately twenty feet from the store. A few minutes thereafter another officer saw the defendant in an automobile driving away from the store. It was not until later that the officers discovered that someone had broken into the store. Five days after the break-in, an S.B.I. agent arrested the defendant, at which time he found some marijuana and eight Timex watches in a paper bag on the front seat of the car the defendant was driving. He was taken to the New Bern jail for safekeeping and thereafter returned to Morehead City where he signed a confession after being given the Miranda warnings. This confession was admitted into evidence after the trial judge on voir dire found that it was voluntarily and understandingly made.

The defendant testified, denying the charges and claiming that the confession was the result of a series of transactions and conversations which led the defendant to believe that he was going to be charged with armed robbery. He said that officers had been talking about an armed robbery as he was being transported back to Morehead City from New Bern and that they had asked him for one of his tennis shoes to see if it would match a print taken at the scene of the robbery. He testified that the officers did not threaten him or offer him leniency as an inducement to sign the confession.

The jury returned a verict of guilty as charged. From a judgment sentencing the defendant to not less than seven nor more than ten years on each count to run concurrently, the defendant appealed.

*Attorney General James H. Carson, Jr., by Assistant Attorney General George W. Boylan for the State.*

*Wheatly & Mason by C. R. Wheatly III for defendant appellant.*

CAMPBELL, Judge.

[1] The appellant contends that the trial court erred in the charge in summarizing certain portions of the evidence relating to how the defendant broke into the drug store and what he stole. The State's evidence showed that the store was entered

through the skylight and that some eight Timex watches and a camera were stolen. There was also evidence that no windows or doors had been entered. The defendant was later arrested with eight Timex watches in his possession and subsequently signed a confession admitting the crime. The confession was admitted in evidence after a proper voir dire examination and finding by the court.

On the basis of the above evidence, the trial judge charged the jury that "[t]he State offers evidence tending to show that . . . the defendant broke into Eckerd's Drug Store . . .; that he went through a skylight . . . and took some eight or nine Timex watches and a camera; that he went out the same way and was seen shortly after the alarm was given. . . ." The charge is contextually in conformity with the evidence as presented. We find no error in this portion of the charge.

[2]   Next the defendant contends that the court expressed an opinion at various points during the trial in statements made by the court before the jury. We have examined the record pertaining to the alleged expressions of opinion and fail to find that the record supports the contention of the appellant. A typical instance complained of by the appellant shows the following on the cross-examination of the store manager:

"Q. Then when you were shown some watches how do you know they were the same watches?

A. For the simple reason just a few days prior to that— O.K. Timex watches are not the most plentiful quantity on the market. Periodically we get bulletins.

Q. What do you mean by that?

A. THE COURT: Let him finish. Tell him how you can identify those Timex watches.

A. Periodically we get bulletins out of Charlotte showing us what watches they have received at the warehouse. Just a few days prior to this I had written an A-1 which is an order to Charlotte with these watches on that order.

THE COURT: What he wants to know is how you could look at those watches and tell them from any other Timex watches.

A. You mean from the same model of that watch to the same model of another watch?

Q. Right.

A. There is no way.

Q. Then you don't know of your own knowledge whether or not the watches that were shown to you are the same watches that were in your store.

A. The same watches; no, sir.

Q. Of your own knowledge these watches could have come from anywhere?

THE COURT: Objection sustained. He's answered your question. Don't argue."

We fail to find that this is an expression of an opinion on behalf of the court that could in any way be considered prejudicial to the defendant. On the contrary it was an effort on the part of the court to expedite the trial and obtain a clear understanding of the evidence. This is a proper function of the trial judge.

[3]   In another instance, counsel for the defendant was questioning an officer about what had occurred when he went to the drug store to answer the alarm. The part complained of by the appellant follows:

"Q. You got a call the alarm had gone off when you shook the doors, did you not?

A. Yes, sir.

Q. It is possible, is it not —?

THE COURT: Let's not get into possibilities, Mr. Wheatly."

Again, this was an effort on the part of the court to expedite the trial and keep the trial within proper bounds. We hold that the record does not show that the trial court expressed any opinion on the merits of the case.

[4]   The appellant's last assignment of error is that the trial court incorrectly charged the jury on the elements required to constitute the crime of larceny. Specifically, the appellant asserts that the court omitted the element "without the owner's consent." The trial court defined larceny as "the taking and steal-

ing and carrying away the personal property of another with the intent on the part of the taker to convert it to his own use and permanently deprive the owner of its use." This definition does not specifically refer to the owner's consent, but considered contextually it is nevertheless a proper charge. By use of the word "stealing" the court put the question of the owner's lack of consent to the jury. "Stealing" is taking another's property without permission and is understood in common usage to be a taking without right, something that any juror would understand and appreciate. Therefore, in context, we find that the charge properly put the various elements of larceny before the jury for their consideration.

We find no prejudicial error in the trial below.

Judges MORRIS and VAUGHN concur.